960 So.2d 913 (2007)
The Child, D.L.T., Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-6186.
District Court of Appeal of Florida, First District.
July 26, 2007.
*914 Nancy A. Daniels, Public Defender, and David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Charlie McCoy, Senior Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
D.L.T., a juvenile, appeals his placement in a high-risk residential facility, instead of in a low-risk residential facility as recommended by the Department of Juvenile Justice (DJJ). The reasons the trial court stated for deviating from DJJ's recommendation identified no need or other attribute of D.L.T.'s justifying his placement in a high-risk residential facility, rather than in the facility DJJ recommended. Accordingly, we reverse the disposition order.
D.L.T. was originally arrested on October 27, 2004, for possession of less than 20 grams of cannabis. He entered a plea of guilty and was placed on probation. On April 7, 2006, a petition alleging a violation of probation was filed,[1] and he was found to have violated probation at an adjudicatory hearing on June 6, 2006. The predisposition report then ordered was filed on June 19, 2006, recommending that D.L.T. be placed in a low-risk residential facility.
On July 7, 2006, D.L.T. was arrested again, after certain cellular telephone calls were intercepted on April 14, 2006, and May 15, 2006. When arrested, the other party to the telephone conversations told an interrogator that D.L.T. had obtained cocaine from her to sell, and D.L.T. was charged with possession of cocaine and with conspiracy to sell cocaine. On October 3, 2006, he entered guilty pleas to both of these charges. D.L.T. admitted he discussed selling drugs, although he said that no sales were ever accomplished. Accepting his pleas, the trial court ordered an updated predisposition report.
At the ensuing disposition hearing on October 25, 2006, DJJ adhered to its original recommendation for commitment to a *915 low-risk facility.[2] After hearing defense counsel argue in favor of following DJJ's recommendation, and listening to a tape of at least one of the intercepted telephone conversations, the judge ruled:
I had a question mark on this one also. I was also amazed at this recommendation.
You're a drug dealer, long and the short of it. You're a drug dealer and you happened to get caught, and you know, your brother is going away for life. You knew who to call. You knew the language. You're just a drug dealer, and personally, I find that horrible.
I agree with the recommendation of the State. I think you are a high risk. I think it is absolutely amazing that they came back with low risk on a conspiracy charge.
I am going to adjudicate him delinquent, commit him to a high risk program. He is going to be placed in secure detention until he is placed in the program. He will be on post-commitment probation.
The trial court thus disregarded DJJ's recommendation because D.L.T. was, she found, a drug dealer, because he had a brother sentenced to life in prison, and because she found "it is absolutely amazing that [DJJ] came back low risk on a conspiracy charge."
A judge's authority to deviate from DJJ's recommendation under section 985.433(7)(b), Florida Statutes (2006), is not unbridled; the judge must act in conformity with the statute.[3]See N.B. v. State, 911 So.2d 833, 834 (Fla. 1st DCA 2005).
A trial judge may not deviate from DJJ's recommendation at a juvenile delinquency disposition hearing simply because the judge disagrees with the recommendation. See K.M. v. State, 891 So.2d 619, 620 (Fla. 3d DCA 2005). In order to deviate, a trial court must identify adequate reasons, grounded in the evidence, for disregarding the recommendation. See A.C.N. [v. State], 727 So.2d [368, 370 (Fla. 1st DCA 1999)]. A judge may reweigh the same factors the Department considered and come to a different conclusion. But, when the court does so, the court "must set forth its reasons in the context of the needs of the child." E.S.B. v. State, 822 So.2d 579, 581 (Fla. 1st DCA 2002). The judge's findings "must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child." Id. The judge must explain why the judge came to a different conclusion than the Department did, and explain why the new restrictiveness level is indicated.
Id. at 835-36. In the present case, the judge's stated reasons for deviating from the recommendation did not meet these requirements, however frustrating it may have been for the judge that DJJ did not alter its recommendation in light of the *916 additional conspiracy and possession charges.
Even if D.L.T. was, in fact, a drug dealer, the judge did not explain why this required placement in a high-risk residential facility instead of in a low-risk residential facility.[4] The judge did state that she believed the appellant was "a high risk" but did not explain what she meant by the term, why he was "a high risk," or for what he was at high risk. As far as can be told from the record, her conclusion in this regard rests principally, if not entirely, on the supposition that he was a drug dealer, even though the State neither charged nor proved a single sale of drugs. While there may have been reasons that would have supported placement in a high-risk residential facility, the judge did not articulate them.
The judge's comments about D.L.T.'s brother's being sent away for life are wholly unsupported by any evidence of record. Even if D.L.T.'s brother has been sentenced to life in prison, moreover, his brother's sentence would not be an appropriate basis for disregarding DJJ's recommendation and meting out harsher punishment to D.L.T. "In order to deviate, a trial court must identify adequate reasons, grounded in the evidence, for disregarding the recommendation." N.B., 911 So.2d at 835.
Reversed and remanded.
KAHN and VAN NORTWICK, JJ., concur.
NOTES
[1] Cocaine possession was one of the grounds alleged for probation violation. A subsequent delinquency petition was filed on May 23, 2006, alleging as a new law violation that D.L.T. had cocaine in his possession.
[2] The State argued that DJJ's recommendation was a "slap in the face," given the additional offense of conspiracy to sell cocaine.
[3] Section 985.433(7)(b), Florida Statutes (2006) provides:

The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court's findings resulting in a modified level of restrictiveness under this paragraph.
[4] Section 985.03(44)(d), Florida Statutes (2006), defines the high-risk restrictive level:

High-risk residential.  Programs or program models at this commitment level are residential and do not allow youth to have access to the community, except that temporary release providing community access for up to 72 continuous hours may be approved by a court for a youth who has made successful progress in his or her program in order for the youth to attend a family emergency or, during the final 60 days of his or her placement, to visit his or her home, enroll in school or a vocational program, complete a job interview, or participate in a community service project. High-risk residential facilities are hardware-secure with perimeter fencing and locking doors. Facilities shall provide 24-hour awake supervision, custody, care, and treatment of residents. Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical restraint may also be used when necessary. The facility may provide for single cell occupancy.